**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDA M. GAUDIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 09-cv-2450 |
| v. ) | |
| ) | Judge Bucklo |
| COUNTRYWIDE HOME LOANS, INC. ) | |
| LANDSAFE APPRAISAL SERVICES, ) | Magistrate Judge Ashman |
| POTESTIVO APPRAISAL SERVICES, ) | |
| INC., CRAIG JOHN POTESTIVO, ) | |
| MORTGAGE ELECTRONIC ) | |
| REGISTRATION SYSTEMS, INC. and ) | |
| DOES 1-5, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS COUNTRYWIDE HOME LOANS, INC. AND
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Countrywide Home Loans, Inc. ("Countrywide") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, the "Countrywide Defendants") move to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state claims upon which relief can be granted.[1]

**INTRODUCTION**

This matter arises out of Plaintiff's purchase of a parcel of property, on which she tore down the existing building and built a house using funding she obtained through Countrywide. Plaintiff, a sophisticated party who was enrolled in a general contractor's course for owner-builders at Moraine Valley Community College, contends that the Countrywide Defendants are to blame for the fact that her investment has not yielded the desired returns. To that end, Plaintiff alleges that the appraisal ordered by her lender, for the lender's own protection, was fraudulently or negligently inflated.

---

[1] MERS is named as a defendant because it is the nominee for Countrywide. MERS did not participate in any of the actions alleged in the Complaint and is not liable for Plaintiff's alleged injuries. This Motion refers to Countrywide and MERS collectively as the "Countrywide Defendants" solely for efficiency purposes.

1

Plaintiff brings five causes of action against the Countrywide Defendants, each of which is legally deficient and should be dismissed:[2]

- Common Law Fraud (Count III);
- Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count IV);
- Civil Conspiracy to Commit Fraud (Count V);
- Negligent Misrepresentation (Count VI); and
- Breach of Contract (VII).

### ALLEGATIONS IN THE COMPLAINT[3]

According to the Complaint, Plaintiff decided to purchase land on which to build her home, and she enrolled in a general contractor's course for owner-builders at Moraine Valley Community College. (Compl., ¶ 13.) In late March or early April, 2006, Tom Faille ("Faille"), a construction loan officer, made a presentation to Plaintiff's class on Countrywide's One Time Close Loan ("OTC"). (Compl. ¶ 14.) The OTC loan includes construction and permanent financing made available by means of a single transaction. (Compl. ¶ 16.)

By late April 2006, Plaintiff had located a desirable property that included a tear-down house. (Compl. ¶ 22.) She contacted Faille and decided to fund the purchase and construction through Countrywide. (Compl. ¶¶ 22.) Plaintiff alleges that Faille told her he had consulted with an appraiser who said the land alone, without the existing house, was worth the purchase price. (Compl. ¶¶ 28-29.) Plaintiff then provided her personal and financial information for the loan application in May 2006. (Compl. ¶ 38.) In May 2006, Countrywide approved Plaintiff for a purchase money loan in the amount of $314,900, and Plaintiff closed on the loan and the property. (Compl. ¶ 42.)

In August 2006, Plaintiff submitted to Countrywide blueprints and specifications for construction, as well as a budget, from the architect she selected. (Compl. ¶ 44.) Plaintiff was told she qualified for an OTC loan, with a first mortgage in the amount of $656,250, which

---

[2] The Complaint contains two additional causes of action for Truth in Lending and Credit Reporting Act violations. These two causes of action were voluntarily dismissed by Plaintiff on May 27, 2009. [Docket 16.]

[3] Unless otherwise noted, all citations will refer to paragraphs in the Complaint. Furthermore, Plaintiff's allegations are treated as true solely for purposes of this Motion to Dismiss. However, unsupported factual or legal conclusions need not be accepted as true. *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir. 2002)

would pay off the existing balance on the purchase money loan, and provide funds for construction. (Compl. ¶¶ 46-47.) Plaintiff believed this represented 80% of the appraised value of the land with the newly constructed house. (Compl. ¶ 48.) Plaintiff was also approved for a Home Equity Line of Credit ("HELOC") in the amount of $126,064, which she believed represented 20% of the appraised value. (Compl. ¶¶ 50-51.)[4] Once the construction was complete, the first-lien construction loan would convert to a permanent loan, while the HELOC would remain in place. (Compl. ¶ 55.)

Plaintiff claims that a couple of days before closing she received documents from Countrywide that appeared to require her to select permanent financing before construction would be completed even though she claims she could choose permanent financing after construction was completed. (Compl. ¶¶ 57-58.) Plaintiff also claims the documents indicated that the interest rate on the HELOC was higher than what she was told by Faille. (Compl. ¶¶ 60-61.) Nonetheless, Plaintiff went forward with closing on the first mortgage construction loan and the HELOC on October 12, 2006. (Compl. ¶ 63.) Shortly thereafter, the existing house was demolished and Plaintiff began construction on her new home. (Compl. ¶ 70.) Plaintiff alleges that Countrywide erred in applying her monthly payments during the construction phase. (Compl. ¶ 71.) Instead of crediting them to the interest reserve or interest accruing, Plaintiff claims that Countrywide applied her payments to reduce the outstanding principal balance. (Compl. ¶ 71.) Plaintiff claims this forced her to draw down on her HELOC sooner than she otherwise would have. (Compl. ¶ 72.) Countrywide credited the $15,000 back to the construction loan from the HELOC, but Plaintiff claims she was not compensated for the additional interest she paid. (Compl. ¶ 75.)

Construction on the new house was complete by November or December 2007. (Compl. ¶ 76.) When Plaintiff reviewed Countrywide's permanent loan products, she was dissatisfied, and she approached other lenders. (Compl. ¶ 77-79.) Plaintiff claims she learned, at this time, that Countrywide and/or Countrywide's affiliated appraiser, Defendant Landsafe Appraisal Services, Inc. ("Landsafe"), had fraudulently over-appraised the value of her property. (Compl. ¶ 79.) Accordingly, Plaintiff accepted a conversion loan with Countrywide. (Compl. ¶ 80.)

---

[4] Plaintiff's loans total $789,970.36, almost $100,000 less than the appraised value. (*See*, Compl., Exhibit B.)

3

Plaintiff alleges that Countrywide hired Landsafe to perform an appraisal of the property with the new house using the blueprints and specs Plaintiff provided. (Compl. ¶¶ 92-93.) To that end, Landsafe hired Defendant Craig John Potestivo, a licensed appraiser, of Potestivo Appraisal Services (the "Potestivo Defendants").[5] (Compl. ¶¶ 96-97.) Plaintiff alleges in a conclusory fashion that Landsafe was Countrywide's agent for the purposes of hiring the Potestivo Defendants, reviewing the Potestivo Defendants' appraisal report, and submitting Landsafe's review of the appraisal to Countrywide's underwriting department. (Compl. ¶ 99.) Plaintiff further alleges that the Potestivo Defendants were the agents of Landsafe and the sub-agent of Countrywide. (Compl. ¶ 100.) Plaintiff does not offer any facts to support her agency theory, other than to allege that Countrywide and Landsafe have common ownership and control. (Compl. ¶ 115.)

On September 6, 2006, the Potestivo Defendants prepared an appraisal report stating that the market value of the property with the new house was $880,000. (Compl. ¶ 102.) Plaintiff alleges that this amount was inflated by at least $250,000. (Compl. ¶ 104.) Plaintiff claims that she learned months later that Landsafe had some affiliation with Countrywide. (Compl. ¶ 107.) Plaintiff subsequently arranged for two different appraisals in March 2008, retrospective to September 6, 2006. (Compl. ¶ 108.) Plaintiff claims that the retrospective appraisals appraised the property at $585,000 and $620,000, respectively. (Compl. ¶¶ 109-110.) She contends that Landsafe or Countrywide must have contacted the Potestivo Defendants and informed them of the appraisal needed to justify the loan so that the construction loan could be approved. (Comp. ¶¶ 118-120.) Landsafe then performed its own review of the Potestivo Defendants' appraisal report and concluded that it was "within tolerance." (Compl. ¶¶ 124-126.) Plaintiff claims that Countrywide then underwrote her loans based on the fraudulent appraisal. (Compl. ¶ 130.) Plaintiff contends that she is unable to make her monthly payments. (Compl. ¶ 150.)[6]

---

[5] Plaintiff has not yet served the Potestivo Defendants with the Complaint.

[6] Paragraphs 146 and 147 of Plaintiff's Complaint should be stricken as inflammatory, irrelevant, and prejudicial.

## ARGUMENT

### A. Standards of Review

Federal Rule of Civil Procedure 8(a) requires a pleader to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," such that it will give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998). "For fair notice to be given, 'a complaint must at least include the operative facts upon which a plaintiff bases his claim.'" *Kyle*, 144 F.3d at 455; *see also Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) ("a complaint must contain facts sufficient to state a claim as a matter of law"). Conclusory pleading is permitted but only "so long as 'the conclusions . . . provide the defendant with minimal notice of the claim.'" *Frieri v. City of Chicago*, 127 F. Supp. 2d 992, 994-95 (N.D. Ill. 2001) (internal citations omitted) (emphasis added). Here, Plaintiff's claims against the Countrywide Defendants fail to meet the minimum pleading requirements of Rule 8(a).

Further, Plaintiff's counts against the Countrywide Defendants should be dismissed for failure to state a claim. A Fed. R. Civ. P. 12(b)(6) Motion to Dismiss should be granted when the pleadings fail to state a claim upon which relief may be granted. A Rule 12(b)(6) Motion tests the sufficiency of the facts and legal theories alleged in the complaint, because "[a]t a minimum, a complaint must contain facts sufficient to state a claim as a matter of law." *Hickey v. O'Bannon,* 287 F.3d 656, 657 (7th Cir. 2002). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan* v. *Allain*, 478 U.S. 265, 286 (1986)). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. As explained below, Plaintiff has failed to state an actionable claim against the Countrywide Defendants and thus her Complaint against them should be dismissed.

### B. Plaintiff's Civil Conspiracy To Commit Fraud Claim (Count V) Should Be Dismissed

#### 1. *Plaintiff Has Failed to Plead Her Civil Conspiracy Claim with Particularity.*

"A civil conspiracy consists of (1) an agreement between two or more persons (2) for the purposes of accomplishing by some concerted action either an unlawful purpose or a lawful

purpose by unlawful means, and (3) some tortious or illegal act by a party to the agreement in furtherance of the agreement. *Illinois Non-Profit Risk Mgmt. Assoc. v. Human Service Ctr. Of So. Metro-East, et al.*, 884 N.E.2d 700, *19 (Ill. Ct. App. 2008) (affirming dismissal of conspiracy claim pursuant to 2-615 for failing to allege specific facts to support claim of conspiracy). In order to maintain an action for civil conspiracy, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may be properly inferred." *Time Savers, Inc. v. LaSalle Bank, N.A.*, 863 N.E.2d 1156, 1167 (Ill. Ct. App. 2007).

Plaintiff relies on the bald assertion that "Defendants combined and conspired with each other to unlawfully arrange for and produce a fraudulent, appraised value for plaintiff's property." (Compl. ¶ 184.) Notably absent from Plaintiff's allegations are *facts* that support the "'necessary and important element' of the existence of an agreement." *Redelmann v. Claire Sprayway, Inc et al.*, 874 N.E.2d 230, 241 (1st Dist. 2007) (dismissal of conspiracy claim was proper where the plaintiff failed to allege facts showing that the defendants agreed to participate in the alleged common scheme) *see also Bd. Of Educ. Of City of Chicago v. A, C, & S, Inc.*, 546 N.E.2d 580, 594 (1989) (dismissal of conspiracy claim where the plaintiffs claimed that numberless and nameless agents, servants, and employees of unspecified defendants partook in fraudulent activity). Plaintiff's failure to plead the specific facts to establish the elements of her civil conspiracy to commit fraud claim require dismissal pursuant to Federal Rule of Civil Procedure 9(b), which requires that "the circumstances constituting fraud shall be stated with particularity." *See Uni\*Quality Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Moreover, a conspiracy is not an independent tort; a plaintiff must state an independent cause of action underlying its conspiracy allegations. *See Indeck North Am. Power Fund, L.P. v. Norweb PLC*, 735 N.E.2d 649, 662 (Ill. Ct. App. 2000) (dismissing conspiracy claim). Because Plaintiff has failed to sufficiently allege her underlying fraud claims, as discussed below, her conspiracy claim fails as a matter of law.

### 2. *A Civil Conspiracy Cannot Exist Between a Principal and Its Agents.*

Under Illinois' intracorporate conspiracy doctrine, a civil conspiracy cannot exist between a principal and its agents, because the act of an agent is deemed to be the act of the principal. *Martinez v. Freedom Mort. Team, Inc.*, 527 F. Supp. 2d 827, 839 (N.D. Ill. 2007); *Buckner v. Atl. Plant Maint.*, 694 N.E.2d 565 (1998). Plaintiff alleges that Landsafe is the agent

6

of Countrywide, and the Potestivo Defendants are the agents of Landsafe, rendering them also the sub-agents of Countrywide. (Compl. ¶¶ 99-100.) This court recently held that civil conspiracy claims in similar circumstances were legally insufficient. *See Whitley v. Taylor Bean & Whitacker Mort. Corp.*, 607 F. Supp. 2d 885, 897-98 (N.D. Ill. 2009) (Judge Castillo) (dismissing conspiracy claim asserted against lender and its alleged agent). Likewise, Plaintiff's civil conspiracy claim here must be dismissed.

C. **Plaintiff's Negligent Misrepresentation Claim (Count VI) Must Be Dismissed**

> *1. Plaintiff Has Not Established The Elements Of A Negligent Misrepresentation Claim*

The elements of negligent misrepresentation are: (1) a false statement of material fact, (2) the defendant's carelessness in ascertaining the truth of the statement, (3) a duty to communicate accurate information, (4) intention to induce the other party to act, (5) action by the other party in reliance on the truth of the statements, and (6) damage to the other party resulting from such reliance. *Kopley Group V., L.P. v. Sheridan Edgewater Props.*, 876 N.E.2d 218, 228 (Ill. Ct. App. 2007). To plead a cause of action against a provider of information employed by a third party, a plaintiff must allege that the purpose and intent of the relationship was to benefit or influence the plaintiff. *Pelham v. Griesheimer*, 440 N.E.2d 96 (1982). Plaintiff has not pled that the purpose and the intent of the relationship between Countrywide and Landsafe was to benefit or influence the plaintiff. To the contrary, lender appraisals are performed for the lender's benefit, not the potential borrower, to ensure that the underlying collateral supports the loan amount. Accordingly, Plaintiff has not, and cannot, plead this essential element.

In *Kopley Group*, the buyers of a property sued the sellers for negligent misrepresentation, alleging that the sellers failed to disclose certain defects in the structure of the building. The court held that the buyers were not justified in relying upon the representations as to the building's structure made by the seller. 876 N.E.2d at 228. The court observed that "[t]he rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations." *Id*. (quoting *Schmidt v. Landfield,* 169 N.E.2d 229, 232 (Ill. 1960)). Similarly, Plaintiff here had the opportunity to obtain an

7

independent appraisal or conduct independent research to determine if she was making a wise investment. She failed to take that opportunity and cannot now allege that she justifiably relied upon the Potestivo Appraisal in determining whether to go forward with her plans to build her new home.

Finally, for the reasons set forth in Section D.1 below, Plaintiff has not pled inducement or that the approval constituted a statement of fact.

### 2. The Economic Loss Doctrine Bars Tort Recovery for Purely Economic Losses

Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine set forth in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982), which bars tort recovery for purely economic losses. The Illinois Supreme Court in *Moorman* defined "economic loss" as "damages for inadequate value, costs of repair or replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property…" *Id*. Plaintiff seeks only economic damages. Plaintiff claims that, as a result of Countrywide's alleged acts, she has suffered "actual inability to make the repayments, the event of mortgage defaults, the destruction of plaintiff's credit, the loss of plaintiff's home in foreclosure, and other *financial injuries* to plaintiff." (Compl. ¶ 193.) (emphasis added) Accordingly, Plaintiff's negligent misrepresentation claim must be dismissed.

### 3. No Exception to the Moorman Doctrine Applies

While an exception to the Moorman Doctrine exists if the claim is founded on a duty of care that the law imposed on the defendant irrespective of the terms of the contract, Count VI still warrants dismissal because Countrywide owed no duty to Plaintiff. *See Whitley*, 607 F. Supp. 2d at 902. Plaintiff alleges that "defendants breached their duty to plaintiff to accurately represent, describe and explain the terms of the loans and their duty not to make an improvident loan, thereby failing to take precautions against creating an unreasonable risk of injury from foreseen and foreseeable events…" (Compl. ¶ 193.) However, no such duty exists under Illinois law.

Illinois courts consistently have held that lenders do not have any heightened duties to their borrowers. *See, e.g., Northern Trust v. VIII South Michigan Assoc.*, 657 N.E.2d 1095, 1102 (Ill. Ct. App. 1995) (noting that a "lender has no duty to refrain from making a loan if the lender knows or should know that the borrower cannot repay the loan"); *ARH Distributors, Inc. v. ITT Commercial Fin. Group*, 1987 U.S. Dist. Lexis 8968, *8 (N.D. Ill. September 28, 1987) (holding

8

that a bank had no duty of care to plaintiff and stating that "[t]he relationship between a lender and a borrower under a contract is not a fiduciary relationship in which the lender owes a duty of care."); *Northcutt v. Chapman*, 819 N.E.2d 1180, 1185-86 (Ill. Ct. App. 2004) (declining to recognize a duty for a lender to determine whether a prospective borrower has a driver's license as prerequisite to obtaining an automobile loan and noting that the consequences for imposing such a duty would be "substantial"). More recently, this court considered this very issue in *Whitley* and dismissed the plaintiffs' negligence claim, holding that the defendants owed no duty of care to plaintiffs under Illinois law. 607 F. Supp. 2d at 902. Similarly, Plaintiff's negligent misrepresentation claim here should be dismissed.

### D. Plaintiff's Fraud Claims (Counts III and IV) Fail To Satisfy The Heightened Pleading Standard of Rule 9(b)

"Federal Rules of Civil Procedure 9(b) requires that the circumstances constituting fraud shall be stated with particularly." *Uni*Quality*, 974 F.3d at 923; Fed. R. Civ. P. 9(b). Rule 9(b) requires a plaintiff to plead the "who, what, when, and where of the alleged fraud." *Id*. Accordingly, to survive a motion to dismiss, Plaintiff must allege specific, particularized facts to support her fraud claims against Countrywide. Plaintiff alleges that Countrywide committed common law fraud (Count III) and violated the Illinois Consumer Fraud Act (Count IV). Neither claim is pled with particularity, and both claims should be dismissed.

#### 1. *Plaintiff's Common Law Fraud Claim Should Be Dismissed*

To sustain a claim for common law fraud, Plaintiff must allege and prove: (1) Countrywide made a false statement of material fact; (2) which Countrywide knew or believed to be false; (3) with the intent to induce Plaintiff to act; (4) Plaintiff justifiably relied upon the truth of the statement; and (5) she suffered damage from such reliance. *See Time Savers,* 863 N.E.2d at 1167 (dismissing conclusory fraud claim). Plaintiff alleges that Countrywide somehow falsely and knowingly inflated the appraised value of her property and approved her loan based on the false appraisal. (Compl. ¶¶ 167-168.) Plaintiff also alleges that Countrywide intended for her to rely on the inflated appraisal and Countrywide's ultimate representation that she could afford the loan. (Compl. ¶169.)

##### a. Plaintiff's Claims of Appraisal Fraud Against Countrywide Make No Sense.

As an initial matter, "[a] financial institution, acting within its conventional role as a lender of money, owes no duty of care to the borrower when preparing an appraisal of the

9

borrower's collateral." *Northern Trust v. VIII South Michigan Assoc.*, 657 N.E.2d 1095, 1102 (Ill. Ct. App. 1995) (dismissing fraud claims brought against lender). "The public policy is that if financial institutions are to remain solvent, they must not be required to insure the success of every investment. To impose upon a lender a duty of care in preparing an appraisal done solely for the lender's benefit would drastically alter the risk undertaken by the lender." *Id*.

Not only does Countrywide have no liability to Plaintiff with respect to the appraisal, Countrywide also had no incentive to inflate the appraisal on Plaintiff's property and approve her for a loan that is not supported by sufficient collateral. Lender-ordered appraisals are performed at the lender's request to ensure that the property which is the collateral for the loan supports the loan amount. If the appraisal was inflated and Plaintiff defaulted on her loan, Countrywide would not be able to recover the loan amount and would suffer a large loss. Thus, Plaintiff's common law fraud claim makes no sense, because Countrywide had no economic motivation to lend Plaintiff more money than the property was worth.

Plaintiff does not allege that Countrywide itself inflated the appraisal. Instead, Plaintiff alleges that "Countrywide had information at that time from which it knew or should have known or discovered appraisal fraud." (Compl. 133.) Plaintiff cannot satisfy the strict pleading requirements for fraud claims by generally asserting that Countrywide knew or should have known of the allegedly fraudulent representations of other parties. Illinois courts have consistently required *specific* allegations of *actual* participation by *each* defendant in an allegedly fraudulent scheme. *See, e.g., Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 592 (Ill. 1996); *Illinois Non-Profit Risk Mgmt. Assoc. v. Human Service Ctr. Of So. Metro-East*, 884 N.E.2d 700, 722 (Ill. Ct. App. 2008); *Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84 (Ill. Ct. App. 2002); *Hoopingarner v. Stenzel*, 768 N.E.2d 772 (Ill. Ct. App. 2002). Even if Countrywide knew, as Plaintiff claims, that the appraisal was inflated, it is not enough to state a claim for fraud, particularly where, like here, Countrywide does not stand in a confidential or fiduciary relationship with the plaintiff. *See Connick*, 675 N.E.2d at 593; *Hoopingarner*, 768 N.E.2d at 778.

*Connick* is particularly instructive. The plaintiff sought to hold Suzuki Motor Corporation liable for false statements allegedly made by local Suzuki dealers. 675 N.E.2d at 592. The Illinois Supreme Court held that the complaint would adequately state a claim for

10

fraud only if Suzuki itself was alleged to have made the statements. The plaintiff did not make such allegations, and the Illinois Supreme Court affirmed dismissal of the complaint. *Id*.

Courts reached the same conclusion in *Prime Leasing* and *Illinois Non-Profit Risk Management*. In *Prime Leasing*, the court affirmed the dismissal of a complaint against officers of a bankrupt corporation even though they were alleged to have known that the company used financial reports to artificially inflate the financial condition of the company and thereby induce the plaintiffs to purchase bonds. 773 N.E.2d at 93. The court held "the complaint…fails to allege with specificity and particularity the exact statements made by either defendant which the appellants relied to their detriment." *Id*. *Illinois Non-Profit Risk Management* affirmed the dismissal of a complaint against defendants who allegedly knew of fraud committed by others, because the defendants were not alleged to have made any false statements, nor did they have a fiduciary relationship with the plaintiffs. 884 N.E.2d at 710.

        b.       <u>Plaintiff Has Not Pled That Landsafe Was Countrywide's Agent</u>.

Moreover, *Connick* requires dismissal even under Plaintiff's theory that Landsafe was Countrywide's agent "for the purposes of: hiring Potestivo to perform the appraisal, subsequently reviewing Potestivo's appraisal report and submitting this review with conclusions as to the validity of the report to Countrywide's underwriting department." (Compl. ¶ 99.) Plaintiff further alleges that the Potestivo Defendants were Countrywide's sub-agent. (Compl. ¶ 100.) The Complaint, however, does not provide any additional facts to support the principal/agent theory. *Connick* concerned a similar pleading in which the plaintiff conclusorily alleged that Suzuki Motor Corporation should be bound by misleading statements made by individual Suzuki dealers. The court in *Connick* noted that

> plaintiffs have not alleged in their complaint that Suzuki expressly gave authority to the individual dealers to bind them to statements regarding the Samurai's safety. Nor did plaintiffs alleged that the position of the dealers inherently gave them implied authority to act on behalf of Suzuki. Rather, the complaint merely stated that the dealers were 'authorized Suzuki dealers.' This, without more, is merely an allegation that the dealers were given permission to sell Suzuki vehicles. It does nothing to support a claim that the dealers had implied authority from Suzuki sufficient to impose liability on Suzuki for fraudulent statements made by the dealers.

11

675 N.E.2d at 592. Similarly, Plaintiff here has only alleged that Countrywide and Landsafe are corporate affiliates under the same corporate parent. (Compl. ¶ 8.) Notably, Plaintiff has not alleged any facts to support an agency relationship between Landsafe and Countrywide.

Furthermore, agency by actual authority generally arises where the principal maintains some level of control over the agent. *See Bunch v. Centeon, LLC*, 2000 U.S. Dist. Lexis 17144, *5-8 (N.D. Ill. November 21, 2000). Plaintiff has not alleged that Countrywide exercised any control over Landsafe. This omission is fatal to Plaintiff's common law fraud claim.

Moreover, a principal can only be liable for its agent's wrongful conduct if such conduct was committed to serve or further the interests of the principal. Restatement (Second) of Agency § 219(1). The allegations in Plaintiff's Complaint show that Countrywide did not benefit and was not intended to benefit from the allegedly inflated appraisals. To the contrary, according to Plaintiff's theory, Countrywide is now the holder of a loan that is outstanding and unpaid, supported by collateral with insufficient value to provide complete security for the loan. The only person who would have benefited from the inflated appraisal was Plaintiff, who was able to obtain financing she needed to construct the home she wanted.

        c.        <u>Plaintiff Fails to Properly Allege Inducement or Reliance</u>.

Even if Plaintiff did somehow plead that Landsafe was Countrywide's agent, Plaintiff has not established that the appraisal was intended to induce Plaintiff to purchase the property and finance the construction of her home through Countrywide. The appraisal itself makes clear on page four that the "intended user" is the "lender/client" (Countrywide) and that the "intended use" is "for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction." (Compl., Exhibit L.) Accordingly, Plaintiff was not the intended recipient of the appraisal.

Moreover, Plaintiff has not pled that she relied upon the appraisal. By Plaintiff's own admission, she: (1) decided to purchase land in order to build her own home (Compl. ¶ 13); (2) located a desirable property with a "tear-down" house standing on it (Compl. ¶ 22); and (3) hired an architect to draw up blueprints and specifications for construction (Compl. ¶ 43.). Plaintiff took all of these acts prior to learning that the Potestivo Defendants had appraised the property for an amount sufficient to cover construction costs. (Compl. ¶ 46.)

Further, the Construction Loan Agreement, which Plaintiff attached to her Complaint and which she signed, states that:

12

> Lender shall have no liability or obligation, either express or implied, to Borrower, to Contractor or to any third parties, in connection with the Property or its construction, except to advance monies as provided under the Agreement….Further, Lender is not liable for the performance of Contractor or any other third parties…**Nothing under this Agreement shall be construed as a representation or warranty, express or implied, on Lender's part.**

(Compl., Exhibit B, ¶ 7.2(d).) (Emphasis supplied) Accordingly, Plaintiff cannot now claim that, to the extent she relied on the appraisal, such reliance was reasonable. *See, e.g., Ivanhoe Fin., Inc. v. Highland Banc Corp.*, 2004 U.S. Dist. Lexis 18521, *7 (N.D. Ill. Sept. 14, 2004) (Judge P. Plunkett) (holding that plaintiffs' fraud claimed lacked reasonable reliance where the contract with their lender belied their claim that they relied upon the appraiser's proposed value of their properties).

          d.       <u>The Appraisal was a Statement of Opinion, Not Fact</u>.

Even assuming that the appraisal performed by the Potestivo Defendants could somehow be attributed to Countrywide, which it cannot, the Potestivo Defendants merely provided an opinion of value, not a statement of fact sufficient to support a claim for fraud. In *Sampen v. Dabrowski*, 584 N.E.2d 493, 497-98 (Ill. Ct. App. 1991), the court examined this very issue and held that an appraisal report which was labeled an opinion was not an actionable misrepresentation. The court noted that "if clearly labeled as an opinion a qualitative evaluation of worth is not a violation of the [Consumer Fraud] Act."

Here, the Potestivo Appraisal unambiguously states multiple times that it is merely the Potestivo Defendants' opinion of the estimate of value. On page two, the appraisal states that "[t]he purpose of this appraisal is to *estimate* the market value of the subject property, as improved…*in my opinion, the estimated market value* of the property as of September 6, 2006 is: $880,000…" (Compl., Exhibit L.) (emphasis added) Moreover, the "Landsafe OTC Value Opinion," as the title suggests, is also a statement of opinion. (Compl., Exhibit M.) According to the Landsafe OTC Value Opinion, the "Purpose of Assignment" was "[t]o *estimate* market value…" (Compl., Exhibit M, p. 1.) The Landsafe OTC Value Opinion further states that "*[t]he value conclusion herein is based on a hypothetical condition*, which is the proposed construction will be completed and built as described in the report and specifications provided on 8-6-06 with

13

a total project total with current specs of $399,963 (construction costs only)." (Compl., Exhibit M, p. 1.) Accordingly, the documents themselves defeat Plaintiff's fraud claims.

### 3. *Plaintiff's Consumer Fraud Claim Fails*

Under the Illinois Consumer Fraud Act, 815 ILCS 505/2, Plaintiff must prove: (1) a misrepresentation or concealment; (2) of a material fact; (3) made with the intent to induce reliance; and (4) in a course of conduct involving trade or commerce. *Hartke v. Illinois Payday Loans, Inc.*, 1999 U.S. Dist. Lexis 14937 (C.D. Ill., Sept. 13, 1999); *Olympic Chevrolet v. GMC*, 1997 U.S. Dist. Lexis 3999 (N.D. Ill., March 28, 1997). The ICFA is not intended to transform non-deceptive and non-fraudulent statements or omissions into actionable ones. *Greenberg v. United Airlines*, 563 N.E.2d 1031 (Ill. Ct. App. 1990); *Harkala v. Wildwood Realty, Inc.*, 558 N.E.2d 195 (Ill. Ct. App. 1990). At a minimum, the ICFA requires a misrepresentation of fact. *Randazzo v. Harris Bank Palatine, N.A.*, 104 F. Supp. 2d 949 (N.D. Ill. 2000).

Illinois courts have repeatedly found that the ICFA is intended only to reach practices of the type that affect consumers generally and is not available as an additional remedy to redress a purely private wrong. *See e.g., AGFA Corp. v. Wagner Printing Co.*, 2002 U.S. Dist. Lexis 12911 (N.D. Ill. July 10, 2002) (ICFA not intended to cover all commercial transactions … to the extent that a plaintiff's allegations are, at their core, a breach of contract, then relief is not warranted under the Act.); *Bankier v. First Fed. Sav. & Loan*, 588 N.E.2d 391 (Ill. Ct. App. 1992) (ICFA did not apply to case involving breach of contract, which was a purely private wrong between two parties that did not affect consumers generally); *Weigel Broad Co. v. Topel*, 1985 U.S. Dist. Lexis 23863 (N.D. Ill. August 19, 1985) (same). It is settled that an individual breach of contract between two parties, as alleged here, does not amount to a cause of action cognizable under the ICFA. *Bankier*, 588 N.E.2d at 398.

Plaintiff alleges that Countrywide violated the ICFA by engaging in a variety of acts relating to her loan, none of which actually state a claim. (Compl. ¶ 175.) Plaintiff alleges that Countrywide misrepresented the loan terms, yet she acknowledges in her Complaint that she was aware of the loan terms "a couple days *before* closing." (Compl. ¶¶ 57-59.) (emphasis added) Accordingly, Plaintiff had the option to refuse to enter into the loan, but she chose not to exercise that option because, "she paid over $16,000 out of her pocket to acquire the property and prepare for construction" and wanted to move forward with construction, which required financing. (Compl. ¶ 62.) "A borrower is not justified in 'relying on representations outside of or contrary

14

to the contract he or she signs where the signer is aware of the nature of the contract and had a full opportunity to read the contract.' A party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract." *Northern Trust Co.*, 657 N.E.2d at 1103 (quoting *CNC Serv. Ctr., Inc. v. CNC Serv. Center, Inc.*, 731 F. Supp. 293, 301 (N.D. Ill. 1990)).

Plaintiff further claims that Countrywide misrepresented to her that she could afford to repay the loan. Illinois law is clear that a "lender has no duty to refrain from making a loan if the lender knows or should know that the borrower cannot repay the loan." *Northern Trust Co.*, 657 N.E.2d at 1102.

Plaintiff also claims the appraisal was inflated and that Countrywide made false statements about the value of the land. As discussed above, Plaintiff cannot assert fraud claims against her lender based on the appraisal prepared by a third party for the lender's benefit.

Plaintiff alleges that she was not provided with federal Notice of Right to Cancel forms. Plaintiff voluntarily dismissed her Truth in Lending Act ("TILA") claim (Count I) on May 27, 2009. To the extent that Plaintiff bases her ICFA claim on TILA, her state law claim is preempted. *See Greisz v. Household Bank (Illinois)*, 8 F. Supp. 1031, 1043 (N.D. Ill. 1998). Even if it was not, Countrywide had no obligation under TILA to provide Plaintiff with Notice of Right to Cancel because TILA exempts "residential mortgage transactions" (i.e., new loans to purchase or construct a home) under Regulation Z § 226.23(f). Moreover, Plaintiff does not plead how a failure to provide such disclosures would constitute a misrepresentation of material fact, particularly where she does not allege that she attempted to rescind her loan within the 3-day period provided by TILA.

### E. Plaintiff's Breach Of Contract Claim Must Be Dismissed

Plaintiff alleges that the parties' agreement required Countrywide to credit her monthly payments during the construction phase to the interest owed and not to principal and that Countrywide breached this obligation. (Compl. ¶¶ 199-200.) Plaintiff does not point to the specific provisions of the parties' agreement in support of this claim. Moreover, Plaintiff acknowledges that Countrywide credited the money misapplied back to the construction loan from the HELOC. (Compl. ¶ 75.) Plaintiff claims, however, that she paid "additional interest" due to this mistake. (*Id*.) Plaintiff does not plead any facts to support her claim that she was damaged, and her breach of contract claim fails.

15

**CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Defendants Countrywide Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc. respectfully request that this Honorable Court:

A.  Grant this Motion and dismiss all counts against them for failure to state a claim upon which relief can be granted; and

B.  Order such other and further relief as is just and necessary.

Dated: August 7, 2009                    Respectfully submitted,

BRYAN CAVE LLP

By:    /s/ Jena Valdetero
       Steven R. Smith (#3128231)
       Jena M. Valdetero (#6290948)
       161 North Clark Street, Suite 4300
       Chicago, IL 60601-3315
       Telephone: (312) 602-5000
       Facsimile: (312) 602-5050
       *Attorneys for Countrywide Home Loans, Inc., Mortgage Electronic Registration Systems, Inc., and Landsafe Appraisal Services*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served via the court's electronic filing system, this 7th day of August, 2009, to:

Al Hofeld, Jr.
Law Offices of Al Hofeld, Jr., LLC
and The Social Justice Project
208 S. LaSalle Street, Suite 1650
Chicago, IL 60604
al@alhofeldlaw.com

    /s/ Jena Valdetero
    Jena Valdetero