# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LINDA M. GAUDIE,                          )
                                          )
            Plaintiff,                    )
                                          )
    v.                                    )
                                          )    No. 09 C 2450
COUNTRYWIDE   HOME    LOANS,   INC.,      )
LANDSAFE    APPRAISAL    SERVICES,        )
POTESTIVO APPRAISAL SERVICES, INC.,       )
CRAIG   JOHN    POTESTIVO,   MORTGAGE     )
ELECTRONIC   REGISTRATION   SYSTEMS,      )
INC., and DOES 1-5,                       )
                                          )
            Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda M. Gaudie ("Gaudie") brings this suit against Countrywide Home Loans, Inc. ("Countrywide") and Mortgage Electronic Registration Systems, Inc. (collectively, "the Countrywide defendants"), Landsafe Appraisal Services ("Landsafe"), Potestivo Appraisal Services, Inc., and Craig John Potestivo, ("Potestivo"), and Does 1-5 based on claims arising from plaintiff's purchase of a property, on which she tore down the existing building and built a house using funding she obtained through Countrywide. Plaintiff alleges, among other things, that the appraisal Countrywide ordered from Landsafe, and that Landsafe hired Potestivo to perform, was fraudulently or negligently inflated. Defendants removed this case from state court. On May 27, 2009, plaintiff dismissed her two federal causes of action. Plaintiff moved to remand, but that motion is denied as moot in

light of the fact that the parties have already demonstrated to the court that diversity jurisdiction is present here.  In addition, both the Countrywide defendants[1] and Landsafe have moved to dismiss the remaining claims brought against them.  For the reasons that follow, those motions are denied.

## I.    Background

The following facts are taken from plaintiff's complaint.  At some point prior to April 2006, plaintiff decided to purchase land in order to build her own home.  At that time, she was enrolled in a general contractor's course for owner-builders at Moraine Valley Community College in Palos Hills, Illinois.  In late March or early April 2006, Tom Faille ("Faille"), who at that time was in charge of construction lending at Countryside's Oakbrook office, made a presentation to plaintiff's class about a construction financing program available from Countrywide.  Faille presented information to the class about Countrywide's One Time Close Loan, in which construction and permanent financing could be obtained in a single transaction with a single application, underwriting and closing process.  Countrywide's written marketing materials for the program listed, as a benefit to the borrower, the fact that "Cost of project supported by Appraisal allows for higher loan approval."

---

[1]    Although Mortgage Electronic Registration Systems, Inc. jointly moved with Countrywide to dismiss Counts III-VI, there are no remaining claims against it.

By late April 2006, plaintiff had selected a desirable property with a "tear-down" house standing on it. She then followed up with Faille to discuss obtaining purchase money financing from Countrywide. On April 28, 2006, Faille told plaintiff that, upon completion of construction, she would have her choice of loan programs, all at market rate, for the permanent financing. Faille informed plaintiff that an appraiser who was familiar with land values in the area confirmed that the land alone would hold the value of the asking price. According to plaintiff, this representation was false, and was done for the purpose of inducing plaintiff to proceed with both the purchase money transaction and the anticipated, subsequent loan transactions with Countrywide.

Plaintiff maintains that she provided information over the phone to Faille in order to complete a loan application. After she received her written loan application in the mail, she noticed that there were errors relating to the amount of plaintiff's gross monthly income, a bonus payment that was expected but had not yet been received, and her length of employment. She corrected the errors by hand and mailed it back to Countrywide, but never received a copy of the final loan application for any of her loans from Countrywide. Countrywide processed her loans as "no doc" or "limited doc" loans, even though plaintiff received regular bi-weekly paychecks. According to plaintiff, "no doc" loans are used

by sub-prime mortgage lenders to exaggerate or fabricate a borrower's financial information in order to qualify unsuspecting borrowers for loans they could not afford. In May 2006, Countrywide approved plaintiff for a purchase money loan of $314,900, and plaintiff closed on the loan.

After acquiring the land, plaintiff hired an architect to draw up blueprints for construction and presented them to Faille and Countrywide. On or about August 6, 2006, Faille and Countrywide sent plaintiff's blueprints and specifications to Landsafe, an appraisal company affiliated with Countrywide. Landsafe then forwarded copies to Potestivo, who was hired to perform the appraisal. In this prospective appraisal, Countrywide's task was to determine whether or not the property with the house (as completed) would support the loan amount needed to pay off plaintiff's existing mortgage debt and provide sufficient construction funds. On or about September 6, 2006, Potestivo prepared an appraisal report for "Landsafe/Countrywide" stating that the market value of the property, with the home as if newly constructed, was $880,000.

In September 2006, Faille informed plaintiff that she qualified for a One Time Close loan. Faille told plaintiff that she had been approved for a first mortgage loan in the amount of $656,250, which would pay off the existing balance of the purchase money loan from Countrywide and provide funds for construction.

Faille also told plaintiff that, based on the project budget, additional financing in the form of a Home Equity Line of Credit would be necessary, and she was approved for a $126,064 line of credit. Plaintiff never received any of the federally-required written, preliminary disclosures of the loan terms, such as a Good Faith Estimate, a Truth in Lending Act statement and other documents. Faille informed her that, once construction was completed, both the first mortgage loan and the line of credit would convert to permanent financing.

A couple of days before closing, plaintiff received documentation from Countrywide indicating that her first mortgage construction loan was going to be a three-year, interest-only, adjustable rate mortgage with a starting rate of 6.375%, which would eventually adjust to a rate as high as 12.375%. Although Countrywide had represented to plaintiff that she would choose a permanent financing program after construction was completed, Countrywide required her to commit to all of the terms of permanent financing at the closing for the construction loan. At the same time, plaintiff learned that the Annual Percentage Rate of her line of credit would not be the prime rate (as Faille had told her) but rather would be 12.5%, which was "prime plus four." Compl. ¶ 59. Plaintiff called Faille to complain and he told her that the documents had to be drawn up in this manner in order for the loan to go through, and that she would still get the market rate on the

first mortgage loan and her full choice of loan programs once the loans converted to a permanent loan. To do so, Faille would, if necessary, refinance both of plaintiff's loans. On October 12, 2006, the construction loan and the line of credit closed. At the closing, no one explained the documents to plaintiff who was presented with two large stacks to sign (one for each loan). Plaintiff was not provided with copies of all the closing documents. In response to plaintiff's request for a copy of all loan application materials, Countrywide sent her a copy of the appraisal report.

Shortly after closing in October 2006, plaintiff began construction on her home. During the construction process, Countrywide erred in applying plaintiff's monthly payments. Instead of crediting the monthly payments she made to the interest accruing each month or to the interest reserve Countrywide had set up to cover interest payments made during the construction phase, Countrywide applied her payments to reduce the outstanding principal balance. This error had the effect of reducing by about $16,000 the amount that plaintiff had available to her from the construction loan, forcing her to draw down on the higher-interest line of credit sooner. Due to compound interest, plaintiff ultimately paid more interest on the construction loan because her initial payments to interest were directed to principal, leaving the unpaid interest to accumulate. Eventually, Countywide credited

$15,000 back to the construction loan from the line of credit, but it did not compensate plaintiff for the additional interest she paid due to its mistake.

Construction on the house was completed in November or December 2007. As construction neared completion, Countrywide called plaintiff to offer her a choice of three permanent loan products, though none was at market rate (which Faille had promised plaintiff). Countrywide also informed plaintiff that it would only convert the first mortgage construction loan, leaving her to continue paying for the line of credit at 12.5% APR. Dissatisfied, plaintiff approached other lenders for a better loan and rate. Lenders ultimately denied her applications because, as plaintiff now learned, Countrywide and its agents had allegedly over-appraised the value of her newly constructed home by approximately $250,000. As a result, plaintiff had no choice but to accept a conversion on the loan Countrywide offered. Countrywide gave plaintiff an interest only, adjustable rate mortgage with a starting rate of 6.375%. From January to March 2008, plaintiff again attempted to refinance but could not gain approval due to Countrywide's inflated appraisal.

## II. Analysis

### A. Standard of Review

Rule 12(b)(6) permits a court to dismiss a claim where plaintiff fails to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6). The court must accept as true the allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (internal citation omitted). To survive a Rule 12(b)(6) motion, "the complaint need only contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting Fed. R. Civ. P. 8(a)(2)). The facts must provide the defendant with "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.*

Plaintiff's claims that are based on "a course of fraudulent conduct," are subject to the heightened pleading standard of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The circumstances of fraud or mistake include the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the

plaintiff." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997).

**B.  Claims**

**1.  Common Law Fraud (Count III)**

Ultimately, under a common law fraud theory, plaintiff will have to prove: (1) a false statement of material fact; (2) which defendant knew or believed to be false; (3) with the intent to induce plaintiff to act; (4) plaintiff justifiably relied upon the truth of the statement; and (5) she suffered damage from such reliance. *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980). Countrywide and Landsafe argue that plaintiff has failed to plead with particularity the circumstances constituting fraud as required by Rule 9(b). Further, defendants attack plaintiff's agency allegations.

The Seventh Circuit has explained that "Rule 9(b) ensures that a plaintiff [has] some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other purposes." *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992). A plaintiff who provides a "general outline of the alleged fraud scheme" sufficient to "reasonably notify the defendants of their purported role in the scheme" satisfies Rule 9(b), so long as the plaintiff states the "time, place and content of the alleged communications perpetrating

the fraud.". *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). However, "the particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim, and that is most likely to be the case where, as here, the plaintiff alleges a fraud against one or more third parties." *Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1051 (7th Cir. 1998). When details of the fraud are "within the defendant's exclusive knowledge," specificity requirements are less stringent, *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994), and, in that case, allegations based on information and belief may be considered, provided that the complaint includes the specific facts on which the belief is based. *W. United Life Assur. Co. v. Fifth Third Bank*, No. 02 C 7315, 2003 WL 444417, at *3 (N.D. Ill. Feb. 19, 2003).

In her complaint, plaintiff alleges a joint effort by Countrywide and Landsafe, from April 2006 to December 2007, to defraud her by falsely inflating the appraised value of her property with the intention that she would rely on that appraisal in deciding to finance the purchase and construction of her home through Countrywide. Further, she alleges that, during this same period, Countrywide made certain representations to her concerning the terms of her loan and the possibility of refinancing her loans after closing. Defendants argue that plaintiff's claims of appraisal fraud "make no sense" because Countrywide "had no

10

incentive to inflate the appraisal on Plaintiff's property and approve her for a loan that is not supported by sufficient collateral." Countrywide Mot. at 10. Given recent occurrences and trends in the failing housing market, Countrywide's argument falls flat. Contrary to Countrywide's blithe assertion, many, in recent years, have called into question lenders' practices with respect to appraisals:

> Putting appraisals completely in the hands of lenders may sound like a good idea in principle, because it is supposed to be lenders who are putting their money at risk in a home loan. But the reality is that many companies that write home loans these days do not have much incentive to worry about the accuracy of appraisals. That is because the companies do not keep the loans on their own books, instead selling them to Fannie Mae or Freddie Mac.

Vikas Bajaj and Julie Creswell, *Suit Says Neighborhood's Boom Was Built on Mortgage Fraud*, N.Y. Times, October 6, 2006. In light of the fact that a lender may be more incentivized by the increased fees and commission rates (for higher loans, late payments and prepayment penalties) associated with larger loan amounts than by insuring that a mortgage loan and the supporting appraisal truly reflect the fair market value of a property, Countrywide's argument is unavailing.

Countrywide and Landsafe argue that plaintiff has failed to show that an agency relationship exists between them. "Agency is a fiduciary relationship in which the agent has the power to act on the principal's behalf." *Sphere Drake Ins. Ltd. v. Am. Gen. Life*

*Ins. Co.*, 376 F.3d 664, 672 (7th Cir. 2004). The test for agency is "whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998).

Plaintiff alleges that Landsafe was Countrywide's agent for purposes of "hiring Potestivo to perform the appraisal, subsequently reviewing Potestivo's appraisal report and submitting this review with conclusions as to the validity of the report to Countrywide's underwriting department." Compl. ¶ 15. In addition, plaintiff alleges that Potestivo was Landsafe's agent, and thus a subagent of Countrywide's. *Id*. at ¶ 100. Further, plaintiff alleges that Landsafe "is or was Countrywide's corporate unit for residential appraisals[,]" *Id*. at ¶ 7, and "[o]n information and belief, Countrywide and Landsafe are or were, at all relevant times, corporate affiliates under common control by the same corporate parent." *Id*. at ¶¶ 7-8. "Potestivo's appraisal indicates it was performed for 'Landsafe/Countrywide' (Exhibit L); for purposes of performing the appraisal, Potestivo was Landsafe's and/or Countrywide's agent." *Id*. at ¶ 98. "On information and belief, Landsafe and/or Countrywide contacted Potestivo between August 6 and September 6, 2006, and advised him of the appraised value result they needed (i.e., at least $880,000) to justify a

loan amount sufficient to cover the pay-off and the new construction. They needed an appraisal that supported an acceptable loan-to-value ration for underwriting purposes." *Id*. at ¶ 118.

Plaintiff has alleged sufficient facts to put defendant on notice of her theory. Because of the factual nature of the agency inquiry, the ultimate determination of whether or not an agency relationship existed between these parties is best done after discovery. *See, e.g., Taylor, Bean & Whitacker Mortgage Co. v. Cebulak*, No. 03 C 7425, 2004 WL 2106605, at *12 (N.D. Ill. Sept. 20, 2004) ("Because the presence or absence of an agency relationship . . . is a question of fact better left for determination at summary judgment . . . [plaintiff] has sufficiently pled an agency relationship. . . .").

Finally, defendants argue that the fraud claim should be dismissed because Illinois treats appraisals as mere opinions that cannot be considered actionable misrepresentations. However, the only case cited by defendants for this proposition, *Sampen v. Dabrowski*, 584 N.E.2d 493 (Ill. App. Ct. 1991), "does not support this allegation of a categorical rule." *Zions First Nat'l Bank v. Green*, No. 07C3760, 2007 WL 4109125, *4 (N.D. Ill. Nov. 16, 2007). Rather, it suggests that the issue is dependent on the facts at hand. Further, there are no controlling Illinois Supreme Court cases on point and at least one Illinois state case suggests that

it is at least possible that a mistaken appraisal might be actionable as a factual statement. *See generally Duhl v. Nash Realty, Inc.*, 429 N.E.2d 1267, 1273-74 (Ill. App. Ct. 1981) ("[A]ccepting plaintiffs' allegations as true, it follows that the defendants' [estimate of value] in this case could be found to have been meant by the parties to be understood as statements of fact to be relied upon rather than as expressions of mere opinion to be accepted solely as such."). It would be premature at this stage to conclude that the appraisal at issue could not be a fraudulent misstatement of fact.

Plaintiff has sufficiently pled a fraud claim against Countrywide and Landsafe based on the alleged fraud in the mortgage loan process. She has alleged the who, what, where and why of the alleged fraudulent scheme. Plaintiff's assertion that she reasonably relied on the appraisal when she decided to go through with the loan is sufficient at this stage. *See generally Goldberg, Ltd. v. Collins*, 637 N.E.2d 1103, 1108 (Ill. App. Ct. 1994) (whether or not a party has reasonably relied on a statement is a question of fact). The fact that plaintiff had already picked out the property and drawn up plans for construction prior to the appraisal does not mean that she did not ultimately rely on the appraisal when she decided to enter into the loan. Plaintiff has provided a general outline of the fraud scheme sufficient to

withstand a motion to dismiss.  The motions to dismiss this claim are therefore denied.

### 2. Illinois Consumer Fraud and Deceptive Practices Act (Count IV)

Under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), plaintiff must ultimately prove the following: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.  *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (2002).

Defendants' primary argument is that this claim should be dismissed because the ICFA is intended only to reach practices of the type that affect consumers generally and is not available as an avenue to redress a purely private wrong.  However, "as long as the plaintiff, whether a business entity or a person, is a consumer, it need only show a personal injury caused by the fraudulent or deceptive acts."  *Skyline Int'l Dev. v. Citibank*, 706 N.E.2d 942, 946 (Ill. App. Ct. 1998).  Unlike the cases cited by defendants, which reject the application of the ICFA to allegations which strictly allege a breach of contract, plaintiff's allegations are not so limited.  Specifically, she targets defendants for their role in inflating the appraisal, and Countrywide in particular for making promises to her about refinancing her loans after

15

construction was completed, both allegations which would arguably fall outside of the parameters of the contract. Further, Landsafe argues that plaintiff failed to allege sufficient facts to support her fraud claim against it. For all the reasons explained above, she has.

Defendants also argue that plaintiff cannot base any part of her ICFA claim on her allegation that defendants violated the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), because, "[t]o the extent that Plaintiff bases her ICFA claim on TILA, her state law claim is preempted." Countrywide Mot. at 15. The single case cited by defendants, *Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998), does not, in fact, support defendants' preemption theory. Instead, *Greisz* held that "a defendant's compliance with the disclosure requirements of the Truth in Lending Act *is a defense* to liability under the Illinois Consumer Fraud Act. . . ." 8 F. Supp. 2d at 1043 (italics added and internal citations omitted). Defendants have therefore put forward no authority for the notion that the ICFA is preempted by TILA. In light of this, and the fact that my own research has not uncovered any support for defendants' preemption theory, this argument fails.

Perhaps recognizing the actual holding in *Greisz*, defendants next argue that, under Regulation Z § 226.23(f), they had no obligation under TILA because "residential mortgage transactions"

are exempted from the duty to give borrowers notice of their right to rescind the transaction at issue. 12 C.F.R. § 226.23(f). A "residential mortgage transaction" is defined as:

> a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling.

12 C.F.R. § 226.2. Thus, by its terms, Regulation Z § 226.23(f) is limited to transactions related to financing the acquisition or initial construction of a dwelling. In her ICFA claim, plaintiff bases her claim on, in part, Countrywide's failure to provide "federal Notice of Right to Cancel forms in connection with the conversion to permanent financing[.]" Compl. ¶ 175. In other words, her claim is based not on her initial purchase money loan or her construction loan, but rather on her later permanent financing loan. Here, defendants have presented no argument or facts which would support a finding that plaintiff's permanent financing loan constituted a "residential mortgage transaction."[2] Because none of the parties provided the loan itself, or any detailed description of it, I am unable to make a determination on this issue. If they so choose, defendants may reassert this argument at summary

_____

[2] Plaintiff failed to provide any response to defendants' argument. Although plaintiff has withdrawn her TILA claim, I note that she previously took the position that her permanent loan fell outside of Regulation Z's "exempt transactions" because it was not related to the initial acquisition or construction of her home. Compl. ¶ 154.

17

judgment, provided they present a fully developed argument with the necessary supporting facts.

Finally, defendants assert that plaintiff did "not plead how a failure to provide such [notice of the right to rescind] disclosures would constitute a misrepresentation of a material fact." Countrywide Resp. at 15. The ICFA prohibits, among other things, the "concealment, suppression or omission of any material fact," with the intent that others will rely upon that concealment, "in the conduct of any trade or commerce." 815 ILCS 505/2. Here, plaintiff alleges that defendants concealed her right to rescind the permanent financing loan and that they did so with the intent that plaintiff would rely on that deception. This is sufficient to withstand defendants' motion to dismiss.

At this stage, plaintiff has alleged sufficient facts to put defendants on notice of her ICFA claim. Defendants' motions to dismiss Count IV are denied.

### 3. Civil Conspiracy to Commit Fraud (Count V)

Plaintiff also pleads a civil conspiracy to commit fraud among Countrywide, Landsafe and Potestivo. Under Illinois law, the elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*,

807 N.E.2d 461, 470 (Ill. 2004). Because the underlying tort of the conspiracy is fraud, Rule 9(b)'s heightened pleading requirements apply to this claim. *Borsellino*, 477 F.3d at 507.

Countrywide, Landsafe and Potestivo allegedly manipulated the appraisal of the property by artificially inflating the property value. According to the complaint, Landsafe and Potestivo are both agents of Countrywide. Under Illinois law, no conspiracy can exist between a principal and an agent because the acts of the agent are deemed to be the acts of the principal. *Buckner v. Atl. Plant Maint.*, 694 N.E.2d 565, 571 (1998). As explained above, the question of agency is best left for the summary judgment stage. If plaintiff is able to prove an agency relationship at that stage, then her civil conspiracy claim cannot stand.

In her response to the motions to dismiss, however, plaintiff, in the alternative, argues that Countrywide and Landsafe are both principals who acted in concert together. Under this theory, she avoids the agency problem which potentially dooms her civil conspiracy claim. Here, plaintiff argues that the defendants worked together to produce an inflated appraisal with the common goal of defrauding her. At this stage, such a pleading sufficiently puts the defendants on notice of the claim against them.

To the extent that plaintiff is able to prove that Countrywide and Landsafe were independent parties conspiring together to

defraud her, her civil conspiracy claim survives.  The motions to dismiss are denied with respect to Count V.

### 4.  Negligent Misrepresentation (Count VI)

In a negligent misrepresentation claim, plaintiff must ultimately prove: (1) a false statement of material fact, (2) the defendant's carelessness in ascertaining the truth of the statement, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance.  *Kopley Group V., L.P. v. Sheridan Edgewater Props.*, 876 N.E.2d 218, 228 (Ill. App. Ct. 2007).

Countrywide argues that plaintiff may not bring this tort claim because of the application of the economic loss doctrine set forth in *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982).  The *Moorman* doctrine bars tort recovery for purely economic losses.  *Id*.  There are, however, exceptions to this doctrine.  The Seventh Circuit explained that "a claim for economic loss may be pursued in tort as well as contract where . . . the claim is founded on a duty of care that the law imposed on the defendant irrespective of the terms of the contract."  *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 617 (7th Cir. 2001).  In other words, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in

tort for the negligent breach of that duty." *Congregation of the Passion v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994).

Plaintiff has alleged that Countrywide and Landsafe owed her a duty to convey accurate information when they knew she would reasonably rely on the appraisal report. At the motion to dismiss stage, this allegation is sufficient. While the determination of the existence of a duty is a question of law for the court to decide, such a determination in this case is more properly made after discovery has been completed and all the facts have been presented via a motion for summary judgment. Once the issue of whether a duty exists on the part of Countrywide and Landsafe is resolved, I will rule on the applicability of the *Moorman* doctrine.

### 5. Breach of Contract (Count VII)

In this count against Countrywide, plaintiff alleges that Countrywide breached its contract to her by failing to credit her monthly payments during the construction phase to the interest owed and not to principal. Further, although Countrywide credited the misapplied money back to the construction loan, plaintiff was never made whole in light of the additional interest she paid due to its mistake. The allegations are sufficient to put Countrywide on notice of the breach of contract claim. Countrywide's motion to dismiss Count VII is denied.

## III. Conclusion

In light of the fact that the parties have already demonstrated to the court that diversity jurisdiction is present here, plaintiff's motion to remand is denied as moot. For all the foregoing reasons, the Countrywide defendants' and Landsafe's motions to dismiss are denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 14, 2010